## Vincennes Bridge Company v. Walker.

(Decided October 18, 1918.)

### Appeal from Fulton Circuit Court.

1. Contracts—Construction.—Where a contract, in writing, is not ambiguous nor its terms inconsistent, the meaning of it, is a question for the court, and not the jury.

2. Contracts—Right of Contractors.—The general rule, which defines the right of a builder to compensation for the erection of a structure, under a contract is; if the structure is built in accordance with the contract, he is entitled to the contract price; if in good faith, and endeavoring to carry out his contract, he builds it, not in literal compliance with the contract, but, substantially so, he is entitled to the contract price, less such sum as the owner may be entitled to as damages, for a failure of literal compliance, under the facts of the case.

3. Contracts—Contractors—Refusal to Accept Work.—If the builder fails to erect a structure in accordance with the contract, or substantially so, the party for whom he builds it, may refuse to accept or to pay for it.

J. E. ROBBINS and B. R. DAVIS for appellant.

W. J. WEBB, W. B. AMBERG and E. J. STAHR for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Vincennes Bridge Company, and the appellee, C. L. Walker, entered into a contract, which was reduced to writing and signed by the parties, on the 7th day of October, 1909, whereby the appellant agreed to furnish all the materials and build, for the appellee, a steel footbridge, over a ravine, which separated Fulton street, in the city of Hickman from the property of Mrs. Jack Rogers, resting at the latter end on a small piece of land owned by appellee. The bridge was to be two hundred and eighty-five feet in length, and to be completed on or before the first day of December, 1909. As the consideration for the furnishing of the materials and construction of the bridge, the appellee agreed to pay the appellant, the sum of $1,575.00, in money, upon the completion and acceptance of the bridge. One undertaking in the contract was as follows: "Said work shall be done in accordance with the plans and specifications hereunto attached, which are hereby made a part of this contract." The plans and specifications were made by an agent of the Bridge Company, who, also, made the contract with the appellee. This agent, before preparing the plans and specifications and entering into the contract, visited the place, where the bridge was to be erected, and made such measurements, as he deemed necessary to the preparation of the plans and specifications, and the contract. The appellant did all toward the construction of the bridge, which it has ever done, on or before the day designated in the contract for the completion of the bridge. While the construction of the bridge was going on, the appellee began to protest, that the bridge was not being constructed, in accordance with the contract, and declared his purpose not to accept or pay for the bridge, as it was being built, but, the agents of appellant, in charge of the work would assure him, that when it was completed, it would be all right, and in accordance with the contract. When appellant had completed its work, the appellee refused to accept the bridge, as not having been erected according to the contract, and refused to pay for it.

On the third day of January, 1916, the appellant instituted this action against appellee for the contract price of the bridge, with interest at 6% per annum, from the completion of the bridge, and alleged, that, it had furnished the materials and erected the bridge, under and in

accordance with the terms of the contract, which had been entered into between it and appellee, and that it had been accepted by appellee, as having been built in accordance with the contract. The appellee answered and denied, that the bridge had been constructed, in accordance with the requirements of the contract, or that he had ever accepted it, as having been so done. He, also, alleged, by way of counterclaim, that the structure was erected at the only place, where a bridge could be built over the ravine, so as to enable him to go from his property into the city of Hickman; that before making the contract with appellant, he maintained a wooden bridge, at that point, and that appellant, in order to erect the bridge, in controversy, had torn down the wooden bridge, and that when he refused to accept the bridge erected by appellant or to pay for it, appellant agreed, that it had not constructed the bridge in accordance, with the contract, but promised to thereafter make same, in its construction and materials, conform to the contract, but had failed to do so; that the bridge, as erected, was unsafe and dangerous and worthless; that he relied upon appellant's promise to rebuild the bridge, so as to make it conform to the terms of the contract, and was thereby prevented from building another bridge, and that since that time, there has been an advance in materials, until such a bridge, as he had contracted for, would now cost him the sum of $2,500.00 and that he had been damaged on such accounts, in the sum of the difference, in the contract price and the present cost of such a bridge, which he pleaded as a counterclaim. The answer of appellee set out, specifically, the instances wherein the bridge, as erected, was different from the bridge which the contract required the appellant to erect for him. The allegations, upon which the counterclaim was based, were contraverted, by agreement upon the record.

At the conclusion of the evidence, each party, moved the court, for a directed verdict in its favor, but, these motions were overruled. The appellant then offered several instructions and moved the court to give them to the jury, but all were overruled, and the court then gave five instructions to the jury, all of which were objected to by both appellant and appellee.

The first instruction, in substance, advised the jury, that the appellant had contracted to furnish all the ma-

terials and construct a steel footbridge for appellee, over a ravine between Fulton street and the property of Mrs. Rogers, 285 feet in length, and to complete same on or before December 1, 1909, "in accordance with the plans and specifications introduced as evidence in this case," and for which the appellee was to pay appellant the sum of $1,575.00 upon its completion and acceptance, and if the jury believed from the evidence, that appellant did build and complete the bridge on or before the date specified, "in accordance with said plans and specifications," "or substantially, in accordance with said plans and specifications," to find for appellant, the sum of $1,575.00, with interest at 6% per annum from December 1st, 1909.

The second instruction directed, that although the jury did not believe that the bridge was constructed as set out in instruction No. 1, yet, if it believed from the evidence that appellee accepted the bridge, to find for appellant the contract price for the bridge, as set out in instruction No. 1.

The third instruction directed, that if the jury, did not believe, from the evidence, that the appellant had constructed the bridge as set out in instruction No. 1, or that appellee accepted it as set out in instruction No. 2, to find for the appellee.

The fourth instruction advised the jury, under what circumstances it should find for appellee upon his counterclaim, and the fifth instruction was the converse of the fourth, but, as the verdict of the jury denied to appellee any recovery upon his counterclaim, it is unnecessary to any further consider the fourth and fifth instructions.

The jury found for appellee, specifically stating in its verdict, that it did so, in accordance with the third instruction. The appellant's motion for a new trial was overruled, and it has appealed, and its complaint of the instructions will be first considered.

The objection urged to the first instruction, and, if the instruction was applicable to the facts of the case, it is the only objection, which could be urged, is, that the court did not construe the contract and tell the jury, what the contract was, fully, but, inasmuch as it advised the jury, that the contract required the bridge to be built, "in accordance with the plans and specifications in evidence," and if it was built substantially "in accordance

with the plans and specifications," to find for appellant, left the jury to judge of both the law and the facts. It is true, that there is nothing better settled, than that the construction of a contract, which is in writing, and the terms of which are not ambiguous nor inconsistent, is the province of the court.

The plans and specifications for the building of the bridge, were by reference made a part of the contract, and there is no dispute between the parties as to the identity of the plans and specifications referred to, with the ones in evidence. There is no claim by either party that any portion of the contract was left out of the writings and plans and specifications by fraud or mistake, cr that anything found its way into the written memorial of the contract, by either fraud or mistake. The plans and specifications were a part of the contract. Culbertson v. Ashland Cement and Construction Co., 144 Ky. 614; 9 C. J. 694, 698. The contention of appellee was, that the bridge, as erected, did not conform to the requirements of the contract, in certain particulars, only, and, except for the reasons hereinafter stated, the court should have instructed the jury, as to the requirements of the contract with reference to these particulars complained of, and then submitted to the jury, whether the bridge as constructed was in accordance with, or substantially in accordance with the terms of the contract, as construed by the court, as to the particulars, in controversy. Culbertson v. Ashland Cement, etc., Co., *supra*. The instruction, however, as given, did not prejudice the substantial rights of the appellant. The general rule which defines the right of a builder to compensation, for a structure, which he erects under a contract, is, that, if he constructs and completes the structure, in accordance with the terms of his contract, the owner must then accept same and pay to the builder the price agreed upon in the contract. If, however, the builder, in good faith, endeavors to build the structure, according to the stipulations of the contract, but, fails to build it in literal compliance with the contract, but substantially does so, he will be entitled to recover the contract price, less such damages as the owner of the property may be entitled to, for a failure of the literal compliance with the contract, under the facts of the case. Taulbee v. Moore, 106 Ky. 749; Kiel v. Kline, 15 R. 158; Short v. Moore, 19 R. 1225; Culbertson v. Ash-

land, etc., Co., *supra;* Smith v. Smyser, et al., 11 Ky. Op., 176; Nance v. Patterson Bldg. Co., 140 Ky. 564; Morford v. Mastin, 6 Mon. 609. A substantial compliance with the contract for the erection of a building or structure is a term, which is not easily defined as applied to all buildings and to all contracts. Where things are omitted by the builder, which can not be supplied by the owner, except at great cost or risk to the structure or where the deviation from the plans and specifications are so substantial, that an allowance out of the contract price will not provide the owner with what he contracted for, or where the contract provides specifically for certain materials and others are substituted, it has been held, that there has not been a substantial compliance. The contract, in the instant case, provided for steel legs, as the supports for the bridge over the ravine, and the legs to come down and rest upon concrete bases, which were to be three feet square and two feet in thickness. The walkway was to be four feet in width; the banisters, five feet in height; at certain places angle irons were to be used; the bridge was to be level and straight and to rest upon pillars, at each end. As constructed the steel legs did not reach down to the concrete bases at two feet from the ground, but some of the steel legs were too short by as much as eleven feet, and others seven, eight and nine feet; the concrete cases were made twenty-eight inches square, and the shortness of the steel legs was supplied by extending the concrete bases up to meet them; the walkway, in many places, lacked from one to five or six inches of being four feet, in width; in place of angle irons, steel rods were used; the banisters were five and a half feet in height; the bridge, instead of being straight, was very crooked; the concrete bases were irregular and out of line; and the bridge, instead of being level, was eighteen and one-half feet higher at one end than the other. It was admitted by all the witnesses, that the bridge had not been constructed in accordance with the contract, but, appellant insisted that it was a substantial compliance with the contract. It is too apparent, however, for argument, that the bridge was not erected in substantial compliance with the contract, and about the facts, there is no disagreement, in the evidence. The differences, in some respects between the bridge contract-

ed for and the one erected, are material and radical. The pleadings make an issue as to whether the erection was substantially as required by the contract, but, the evidence is all upon one side. Hence, the first instruction although defective, was more favorable to appellant, than it was entitled to have. It submitted to the jury, the question as to whether the bridge had been built in accordance with the contract, when the appellant did not make any contention of that kind. It, also, submitted the question, as to whether the bridge had been built, substantially, as the contract required, when all the evidence showed indisputably, that it had not. If it had been constructed in substantial compliance with the contract, it was admitted, that it had not been literally so constructed, and the instruction did not provide for any damages for the failure. While the instruction should not have been given, at all, it was not prejudicial to appellant, as it was given two chances under it, to neither of which, was it entitled.

The third instruction is complained of upon the ground, that appellee had no right to refuse to accept the bridge. The court can not make a contract for the parties, and it is not authorized to compel one to accept and pay for something, which he has not contracted for. If the bridge had been constructed according to the contract, the appellee would have no choice, except to accept it, and whether he accepted it or not, he would be required to pay for it, the amount, he promised. If it had been constructed, not in literal compliance with the contract, but, substantially so, the law would consider, that appellee had received in fact, what he had contracted for, and would require him to pay the contract price, less the damages for failure of a literal compliance. Where the contractor in the erection of a structure does not build it as the contract requires, or substantially so, the one for whom it is built has a right to refuse to accept it and to refuse to pay for it, and the contractor, having failed to furnish the article contracted for can not recover the price. Escott v. White, 10 Bush 169; 9 C. J., 737. The contract, in instant case, was an entire one and indivisible, and provided for the payment of the price agreed upon for the bridge, after it was completed and accepted. The character of the bridge was such, as there might be a total rescission of the contract, and the builder could remove his materials, by restoring the parties to the

status existing, when appellant commenced to execute the contract. The same rule would not apply, as doubtless would, where the nature of the contract, and the work done under it, was such, that the parties could not by a total rescission of their contract be restored to their former status. Hence, the third instruction, under the evidence, was proper, except to the extent, that it precluded a finding for appellee, if the materials had been furnished and the work done by appellant, substantially as required by the contract, for the reasons above stated, and that portion of it was not prejudicial to appellant, as it was more favorable to it, than it was entitled.

The appellee could have, of course, accepted the bridge, as having been completed according to the contract, and this was alleged by appellant and denied by appellee, and under the evidence was the only issue in the case to be submitted to the jury. This issue was submitted by the second instruction, and the third was its converse. It is insisted, that the finding of the jury, that appellee had never accepted the bridge as having been made in accordance with the contract, was contrary to the great weight of the evidence, and in fact, that the court should have directed a verdict for appellant. The evidence shows without contradiction, that appellee protested from the beginning and before the construction of the bridge was ended, that it was not being built according to the contract, and declared that he would never accept nor pay for it. The agent of appellant who made the contract, and who undertook to collect the price from appellee, was proven to have admitted that the bridge was not such as appellee had contracted for. It was also proven that he had occasionally passed over the bridge and had offered certain lots for sale, representing, that he would have a steel footbridge built over the ravine, and that he had collected the price of a lot sold to one individual, after the bridge had been erected. It however, does not clearly appear, what the nature of the arrangement between appellee and the purchaser of the lot was, in reference to the bridge. The lot purchaser is not now complaining. The appellee testified that appellant had promised, after he had refused to accept the bridge, that it would make it conform to the contract. It seems, that after appellee's wooden bridge, over the ravine, was torn down by appellant, that he had no practical way of

going from his property, into the town of Hickman, except over the bridge, in controversy, and that there was no other place over the ravine, where he could erect a bridge. The situation is not unlike that of a man, who employs one to build a house upon his premises, and which is not done in substantial compliance with the contract, and who refuses to accept the house as built according to the contract. The use of the house, under such circumstances is not considered as an acceptance of the work. Morford v. Mastin, 6 Mon. 609; Escott v. White, *supra.* Besides, the appellee was relying upon the promise of appellant to complete the bridge according to the requirements of the contract, which it has never done. The verdict of the jury was that appellee had never accepted the bridge in discharge of the contract, as well as that it was not built substantially, as required by the contract, and the verdict seems to be amply supported by the evidence.

Several other alleged errors are complained of as being grounds for reversal, but they are not of such character as to have influenced the result of the trial, and will not be adverted to.

The judgment is affirmed.